UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ACCENT WINDOWS, INC., | )   Case No. 11- 14 348-SBB |
| EIN #84-1292301 | )   Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING; (II) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, AND 363; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion of Accent Windows, Inc., Debtor and Debtor in possession (the "**Debtor**" or "**Borrower**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), dated March 4, 2011 (the "**Motion**"), (a) seeking the entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**") pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364 (c)(2), 364(c)(3) and 364 (e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") (i) authorizing the Debtor to obtain up to $56,250..00 on an interim basis and $135,000.00 on a final basis in aggregate principal amount of postpetition financing (the "**DIP Facility**") and the loan under such facility (the "**DIP Loan**") on the terms set forth in this Order and the Loan Agreement attached to the Motion as **Exhibit 1** (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof (the "**Loan Agreement**")), together with the Interim Order and the Final Order and any other definitive loan documents

required by Lender identified in the Loan Agreement (the "**DIP Lender**") and entered into by the parties thereto (collectively, the "**DIP Facility Documents**") (ii) authorizing the Debtor's limited use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, "**Cash Collateral**"), solely on the terms and conditions set forth in this Order and the Operating Budget(as defined below); and (iii) granting adequate protection to the Prepetition Lender (as hereinafter defined); (b) requesting, pursuant to Bankruptcy Rule 4001, that an emergency interim hearing (the "**Interim Hearing**") on the Motion be held for the Court to consider entry of this Order, on an interim basis; and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), that this Court (i) schedule a final hearing (the "**Final Hearing**") on the Motion within fourteen (14) days after service of the Motion to consider entry of the Final Order, and (ii) approve notice procedures with respect thereto; and the Interim Hearing having been held by this Court on March 10, 2011; and the Court having considered the Motion and all pleadings related thereto, including the record made by the Debtor at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    On March 4, 2011 (the "**Petition Date**"), the Debtor filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business and manage its properties as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in the Chapter 11 Case.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The Debtor has provided notice of the Motion and the Interim Hearing by facsimile or overnight mail to: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Lender (as hereinafter defined); (iv) the Prepetition Lender; (v) all other parties with liens of record on assets of the Debtor as of the Petition Date; (vi) all financial institutions at which the Debtor maintains deposit accounts; (vii) the landlords for all non-residential real properties occupied by the Debtor as of the Petition Date; and (viii) all other parties requesting notice pursuant to Bankruptcy Rule 2002 and 4001(b), (c) and (d).  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

D.     The Debtor is obligated on outstanding Promissory Note dated as of February 25, 2011 (the "**Prepetition Loan**"), in the original principal amount of Fifteen Thousand and no/100 Dollars ($15,000.00) issued to P.H. Tech, Inc. (the "**Prepetition Lender**").  The Prepetition Lender contends that he obligation of the Debtor under the Note is secured by all assets of the Debtor, pursuant to a Security Agreement dated as of February 25, 2011, and UCC filing with the Colorado Secretary of State, Reception No. 20112009696, on February 28, 2011.

E.     The Debtor requires the financing described in the Motion to, among other things, (i) fund the working capital and general corporate needs of the Debtor and the costs of the Chapter 11 Case in accordance with the Operating Budget (as defined below); and (ii) provide

3

adequate protection to the Prepetition Lender.  If the Debtor does not obtain authorization to borrow under the DIP Facility Documents and the DIP Facility is not approved, the Debtor will suffer immediate and irreparable harm.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code section 503, or other financing under Bankruptcy Code sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Facility Documents based on the totality of the circumstances.  Moreover, a loan facility in the amount provided by the DIP Facility Documents is not available to the Debtor without granting the DIP Lender, superpriority claims, senior liens, and security interests, pursuant to Bankruptcy Code sections 364(c)(1), (2), (3) and 364(d), as provided in this Interim Order and the DIP Facility Documents.  After considering all alternatives, the Debtor has concluded, in the exercise of its prudent business judgment, that the credit facility provided under the DIP Facility Documents represents the best financing package available to it and is in the best interests of the estate and its creditors.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Prepetition Collateral.

F.     The Debtor has disclosed to all interested parties that it intends to into an Asset Purchase Agreement with the DIP Lender pursuant to which the Debtor proposes to sell, and the DIP Lender, or its assigns, proposed to buy, substantially all of the assets of the Debtor; provided, however, that the Asset Purchase Agreement contemplates the auction of the Debtor's assets should other potential purchasers express interest on those assets.  The purpose of the DIP Loan is to preserve the going concern value of the estate pending the sale of the Debtor's assets to the DIP Lender, or the highest bidder therefor.

G.      The Debtor also has an immediate need to use Cash Collateral to, among other things, fund the ordinary costs of its operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, pay license fees, and satisfy other working capital and operational needs. The Debtor's access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtor's estate so that the Debtor can maximize the value of its estate. Consequently, without the continued use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtor and its estate would suffer immediate and irreparable harm.

H.      The Prepetition Lender is prepared to consent to the Debtor's use of the Cash Collateral, provided that the Court authorizes the Debtor, pursuant to sections 361 and 363 of the Bankruptcy Code:

i.   to grant to the Prepetition Lender, as adequate protection for the Adequate Protection Obligations (as hereinafter defined), but subject to the Carve-Out, (a) replacement first priority security interests in and liens and mortgages (collectively, the "**Adequate Protection Liens**") on all of the assets (tangible, intangible, real, personal or mixed) of the Debtor, whether now owned or hereafter acquired, including, without limitation, accounts, documents, inventory, equipment, instruments, chattel paper, commercial tort claims, cash, cash equivalents, securities accounts, deposit accounts, leasehold interests, contracts, copyrights, trademarks, causes of action, and other general intangibles, and all products and proceeds thereof, other than claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "**Avoidance Actions**"). (collectively, the "**Post-Petition Collateral**") subject only to the senior liens to be granted to the DIP Lender pursuant to the DIP Facility and this Order and

5

the lien of TruSeal Technologies, Inc. in equipment generally described as a Besten 84" 5 Pair

Press (the "**Truseal Lien**"), and (b) a superpriority administrative expense claim under section

507(b) of the Bankruptcy Code (the "**Adequate Protection Priority Claim**"), which Adequate

Protection Priority Claim shall be senior in priority to any and all claims under sections 503(b)

and 507(b) of the Bankruptcy Code, except the priority claims granted to the DIP Lender

pursuant to the DIP Facility and this Order; and

        ii. the Adequate Protection Liens and Adequate Protection Priority Claims

shall secure the payment of the Prepetition Loan in an amount equal to any and all diminution in

the value of the Prepetition Lender's interests in the Prepetition Collateral from and after the

Petition Date (the "**Adequate Protection Obligations**") including, without limitation, any such

diminution resulting from any of the following: (i) the use by the Debtor of the Prepetition

Collateral, including, without limitation, the Cash Collateral, and (ii) the imposition of the

automatic stay pursuant to section 362(a) of the Bankruptcy Code.   The Adequate Protection

Liens shall be subject to the Carve-Out and senior to any other liens on the Post-Petition

Collateral except the liens securing the DIP Facility.

    I.    The consent of the Prepetition Lender to the use of Cash Collateral as set forth

herein shall not extend to any other use of Cash Collateral.   Furthermore, the consent of the

Prepetition Lender to the use of Cash Collateral as set forth herein shall not constitute, and shall

not be construed as constituting, an acknowledgment or stipulation by the Prepetition Lender that

its interests in the Prepetition Collateral are adequately protected pursuant to this Order or

otherwise.

    J.    Good cause has been shown for immediate entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and (c)(2).   In particular, the authorization granted herein for the

Debtor to obtain postpetition financing pursuant to the DIP Facility Documents and to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this Order is in the best interests of the Debtor, its estate and creditors. The terms of the DIP Facility Documents and the Debtor's continued use of Cash Collateral are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.     The Debtor and the Prepetition Lender have negotiated the terms and conditions of the Debtor's continued use of Cash Collateral and this Order in good faith and at arm's-length. The DIP Facility and/or other financial accommodations made to the Debtor by the DIP Lender pursuant to this Interim Order and/or the DIP Facility Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Lender shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

L.     Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted on an interim basis, subject to the terms and conditions set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on its merits. This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the

possible application of Bankruptcy Rules 6004(h), 7062, and 9014.  The terms and provisions of the DIP Facility Documents are approved on an interim basis.

        2.     The Debtor is hereby authorized to immediately obtain the DIP Loan, pursuant to the terms of this Interim Order and subject to the terms of the DIP Facility Documents, in the aggregate principal amount of up to $56,250.00.  Available financing and advances under the Loan Agreement shall be made to fund, in accordance with the DIP Facility Documents, (i) the working capital and general corporate needs of the Debtor and the costs of the Chapter 11 Case in accordance with the Operating Budget (and the variances permitted thereto), and (ii) provide adequate protection for the benefit of the Prepetition Lender.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Facility Documents unless the conditions precedent to make such advances under the Loan Agreement and the DIP Facility Documents have been satisfied in full or waived in accordance with the provisions thereof.

        3.     The Debtor is hereby authorized to use Cash Collateral solely in accordance with the Operating Budget (as defined in the Loan Agreement) and the terms and conditions set forth in this Order.  Subject to the terms and conditions set forth in this Order, the Debtor may use Cash Collateral to: (i) fund general corporate and working capital requirements of the Debtor (including, without limitation, the Debtor's ongoing administrative expenses in the Chapter 11 Case, and (ii) pursue a sale of all or substantially all of its assets, in each case in accordance with the Operating Budget and the terms of this Order.

        4.     Attached hereto as <u>Exhibit A</u> is an Operating Budget (the "**Approved Budget**") for the period from March 4, 2011 through April 29, 2011 (the "**Approved Budget Period**") which reflects the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to

incur during each week of the Approved Budget starting as of March 4, 2011.  On a weekly basis, beginning with the week beginning March 5, 2011, the aggregate actual disbursements specified in the Approved Budget during each such week must be no greater than 105% of the aggregate projected disbursements for such period.  If necessary, but not later than two weeks prior to the expiration of the initial Approved Budget Period, the Borrower shall provide to the DIP Lender an updated Operating Budget for any additional period required to effectuate the sale of all or substantially all of the Debtor's assets, in substantially the same format as the previous budget, which upon acceptance by the DIP Lender, shall become the Approved Budget; provided, however, that a new Operating Budget may be effectuated at any time with the consent of the DIP Lender.  In the event the Borrower and the DIP Lender fail to agree upon a new Operating Budget by the end of the then-current Approved Budget, the DIP Facility will terminate upon the expiration of the last Approved Budget.

5.       The Debtor shall provide to the DIP Lender and the Prepetition Lender so as actually to be received on or before 12:00 noon (Eastern time) of each Friday, a weekly line-by-line variance report for the preceding week ending on Saturday, and on a cumulative basis for the period from March 5, 2011 to the last day of such preceding weekly period, which variance reports shall be in form and substance reasonably acceptable to the DIP Lender and the Prepetition Lender comparing actual cash disbursements to amounts projected in the Approved Budget.   Failure by the Debtor to comply with the Operating Budget shall constitute a Termination Event (as defined below).  The Operating Budget shall not be modified or otherwise amended without the written consent of the Prepetition Lender and the DIP Lender.

6.       The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law

as of the Petition Date without any further action by the Debtor or the Prepetition Lender, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, or other documents.

7.     As adequate protection for the payment of the Adequate Protection Obligations, if any, and subject to the Carve-Out, the Prepetition Lender shall be granted the Adequate Protection Liens and the Adequate Protection Priority Claim (each as defined in Paragraph H above).

8.     The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Facility Documents, in each case including any amendments thereto.  The Debtor is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the Postpetition Collateral and securing all of the Debtor's obligations under the DIP Facility Documents.

9.     The Debtor is hereby further authorized to (i) perform all of its obligations under the DIP Facility Documents, and such other agreements as may be required by the DIP Facility Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Facility Documents and this Interim Order.

10.     All obligations under the DIP Facility Documents shall constitute valid and binding obligations of the Debtor, enforceable against it and its successors and assigns (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Case or subsequent or superseding chapter 7 or Chapter 11 Case (each, a "**Successor Case**")), in accordance with the terms of the DIP Facility Documents and the terms of this Interim Order,

and no obligation, payment, transfer or grant of security under the DIP Facility Documents or this Interim Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d)) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

11.     All fees, costs and/or expenses payable or reimbursable by the Debtor as set forth in the DIP Facility Documents are hereby approved.  The Debtor is hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the DIP Facility Documents and this Interim Order, without the DIP Lender or its respective counsel having to file any further application with this Court for approval or payment of such fees, costs or expenses.

12.     The Debtor may enter into any non-material amendments, consents, waivers or modifications to the DIP Facility Documents without the need for further notice and hearing or any order of this Court; provided, however, that (a) amendments and waivers that affect the rights, obligations or duties of the Prepetition Lender shall also require the consent of the respective affected party; provided, further, however, that the Debtor shall provide any official committee appointed in the Chapter 11 Case and the U.S. Trustee with notice of any material modification to the DIP Facility Documents.

13.     The DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "**Superpriority Claim**") pursuant to Bankruptcy Code section 364(c)(1), for all obligations of the Debtor under the DIP Facility Documents (collectively, the "**DIP Obligations**") having priority over any and all other administrative claims against the Debtor,

11

now existing or hereafter arising, of any kind whatsoever, arising or ordered under Bankruptcy

Code sections 503(b), or 507 (b), whether or not such expenses or claims may become secured

by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall

be payable from and have recourse to all pre- and postpetition property of the Debtor and all

proceeds thereof, other than Avoidance Actions. The Superpriority Claim granted in this

paragraph shall be senior to the Adequate Protection Priority Claim, but shall be subject to the

Carve-Out. Except as set forth herein, no other superpriority claims shall be granted or allowed

in the Chapter 11 Case unless and until the DIP Obligations have been paid in full.

14.     To secure the DIP Obligations, the DIP Lender is hereby granted,

immediately upon the entry of this Interim Order, valid, enforceable, non-avoidable and fully

perfected, first priority senior liens on and security interests (collectively, the "**Postpetition**

**Liens**") in all Prepetition Collateral and all Post-Petition Collateral, other than Avoidance

Actions, senior to the Adequate Protection Liens, and subject and subordinate only to the

TruSeal Lien and the Carve-Out.

15.     Except for the Carve-Out and the DIP Obligations, no claim or lien having

a priority superior to or *pari passu* with those granted pursuant to this Order to the Prepetition

Lender shall be granted or allowed while any portion of the Adequate Protection Obligations

remain outstanding.

16.     The Postpetition Liens shall not at any time be (i) made subject or

subordinate to, or made *pari passu* with, any other lien, security interest or claim existing as of

the Petition Date, or created under Bankruptcy Code sections 363 or 364(d) or otherwise, other

than the Carve-Out or (ii) subject to any lien or security interest that is avoided and preserved for

the benefit of the Debtor's estate under Bankruptcy Code section 551.

17.    The Postpetition Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements or instruments, such that no additional steps need be taken by the DIP Lender to perfect such interests. Subject to notice of hearing and entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Post-Petition Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Lender the Postpetition Liens on such fee, leasehold or other interest or other Post-Petition Collateral or the proceeds of any assignment, sale or other transfer thereof.

18.    The provisions of this Order shall be binding upon and inure to the benefit of the Prepetition Lender, the DIP Lender, the Debtor, and its respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of either Debtor's estate or with respect to its property).

19.    The provisions of this Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Case; (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted

pursuant to this Order shall maintain its priority as provided by this Order until all of the Adequate Protection Obligations and DIP Obligations are indefeasibly paid in full and discharged.

20.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt by the Prepetition Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby with respect to any Adequate Protection Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of Adequate Protection Obligations by the Debtor prior to the actual receipt by the Prepetition Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Order, and the Prepetition Lender shall be entitled to all of the rights, remedies, protections and benefits granted under this Order with respect to all uses of Cash Collateral and the incurrence of Adequate Protection Obligations by the Debtor.

21.     This Interim Order is entered pursuant to Bankruptcy Code section 364, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by Bankruptcy Code section 364(e).  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lender, prior to the date of receipt by the DIP Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim

Order or pursuant to the DIP Facility Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Facility Documents with respect to all such indebtedness, obligations or liability.

22.      Upon entry of this Interim Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtor which in any way relates to the Postpetition Collateral.  The Debtor is authorized and directed to take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy.

23.      Each of the DIP Facility Documents to which the Debtor is or will become a party shall constitute legal, valid, and binding obligations of the Debtor party thereto, enforceable in accordance with its terms.  The DIP Facility Documents have been or will be properly executed and delivered to the DIP Lender by the Debtor no later than one business day after entry of this Interim Order.  The rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Interim Order and in the DIP Facility Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Case, by the dismissal or conversion of the Chapter 11 Case or in any Successor Case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Facility Documents.

24.      *Modification of Automatic Stay.*

(a)     Upon the occurrence of a Termination Date, the Lender shall have no further obligation to fund the DIP Loan; and, and after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days prior notice to respective counsel to the Debtor, Committee, or, in the absence of a Committee, to the twenty largest unsecured creditors, , Prepetition Lender, and U.S. Trustee, the DIP Lender shall be entitled to foreclose or otherwise enforce its security interests in and liens on any or all of the Postpetition Collateral and/or to exercise any other default-related remedies under the DIP Facility Documents, this Order or applicable law in seeking to recover payment of the DIP Obligations.  In addition to the Debtor's rights to seek authorization to use the Cash Collateral and/or Postpetition Collateral of the DIP Lender and Prepetition Lender and on a non-consensual basis on and after the Termination Date upon notice and hearing, and the reservation of all rights of the DIP Lender and Prepetition Lender to object to, and contest, such authorization as described above, the parties acknowledge and agree that (x) the only other issue to be determined and decided at such Court hearing is whether the Termination Date has occurred and is continuing and (y) if the DIP Lender is granted such relief from the automatic stay, then the Prepetition Lender will likewise be granted such relief at such time.  Notwithstanding the foregoing, should a Termination Date arise solely upon the occurrence of an Event of Default under Section 24(c)(xvii) hereof, then the DIP Lender's remedies shall be limited to a termination of any further obligation to made advances under the DIP Loan, and all other remedies shall be deferred unless or until the occurrence of an additional Event of Default.

(b)     As used in this Order, the term "**Termination Date**" means the earliest date on which any of the following events:

(i)     the date on which the Debtor files a motion with the Bankruptcy Court for authority to proceed with the sale or liquidation of the Borrower (or any material portion of the assets of a Borrower) without the consent of the DIP Lender, and

(ii)    the acceleration of the Loan or termination of the commitments under the DIP Facility, including, without limitation, as a result of the occurrence of an Event of Default (as defined below).

(c)     As used in this Order, the term "**Event of Default**" means:

(i)     The Borrower shall fail to make any payment of principal, interest, fees, or other amounts under the DIP Facility when the same becomes due and payable; or

(ii)    Any representation or warranty made by the Borrower in the Loan Agreement, the Interim Order or the Final Order, any DIP Facility Document or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with the Loan Agreement or any such other DIP Facility Documents shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; or

(iii)   The Debtor shall breach or violate any term, covenant or agreement contained herein, the Interim Order or the Final Order; or

(iv)    Conversion of the Borrower's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; or

(v)     The appointment of a trustee in the Borrower's Chapter 11 Case without the consent of the DIP Lender; or

(vi)    The dismissal of Borrower's Chapter 11 Case; or

(vii)   The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order or the Final Order without the consent of the DIP Lender; or

(viii)  The Interim Order shall not have been replaced by a Final Order acceptable to the DIP Lender in its sole discretion within twenty-five (25) days of the entry of the Interim Order; or

(ix)    The Borrower shall have proposed Sale Procedures, as defined in the Loan Agreement, not approved by the DIP Lender; or

(x)     The Borrower shall attempt to vacate or modify the Interim Order or the Final Order over the objection of the DIP Lender; or

(xi)    The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any other security interest or lien (other than the DIP Lender) in any Postpetition Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Postpetition Collateral; or

(xii)   Any provision of the documents relating to the Postpetition Loan shall cease to be valid and binding on the Borrower, or the Borrower shall so assert in any pleading filed in any court; or

(xiii)  The Debtor shall (i) bring or consent to any motion or application in the Chapter 11 Case to obtain financing from any person other than the DIP Lender under section 364 of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under

the DIP Facility); (ii) grant any lien that is *pari passu* or senior to any lien granted to the DIP Lender under the Interim Order or Final Order, except as permitted therein; or (iii) grant a superpriority claim, other than that granted in the Interim Order or Final Order (and other than with respect to the Carve-Out or adequate protection provided to the Prepetition Lender), which is *pari passu* with or senior to any of the claims of the DIP Lender against the Borrower hereunder; or

(xiv)   Any other party shall seek and obtain allowance of any order in the Chapter 11 Case to recover from any portions of the Postpetition Collateral any costs or expenses of preserving or disposing of such Postpetition Collateral under section 506(c) of the Bankruptcy Code; or

(xv)   There shall occur a variance from the Approved Budget in excess of approved variances, unless waived by the DIP Lender; or

(xvi)   The Borrower shall fail to provide an Operating Budget that is acceptable to DIP Lender in accordance with the terms set forth herein, the Interim Order or the Final Order; or

(xvii)   Either Borrower or the DIP Lender shall terminate the Asset Purchase Agreement between them

(xviii) .

25.   Notwithstanding anything in this Interim Order to the contrary, the DIP Lender's obligation to make the DIP Loan in accordance with the DIP Facility Documents shall automatically terminate without any further action by this Court or the DIP Lender, upon the Termination Date.

26.     Upon the occurrence of a Termination Event, to the extent unencumbered funds are not available to pay in full administrative expenses, the Adequate Protection Claims, the Adequate Protection Liens and the liens securing the Prepetition Loan and the DIP Facility, repayment to the DIP Lender shall be subject to (i) the payment of (a) unpaid professional fees and expenses specified in the Operating Budget that have been incurred as of the date of such Termination Event by professionals retained by the Debtor, any official committee of unsecured creditors (the "**Committee**"), any other statutory committee, trustee, examiner or other representative appointed in the Chapter 11 Case (collectively, the "**Professionals**") net of any unused retainers for such professional fees and expenses, (the "**Professional Fee Carve-Out**"), and (ii) the payment of fees payable pursuant to 28 U.S.C. § 1930 (together with the Professional Fee Carve-Out, the "**Carve-Out**").  Estate professional fees and expenses may be paid only to the extent they are allowed, or as otherwise permitted pursuant to the compensation procedures approved by the Bankruptcy Court.

27.     Unless and until the Prepetition Loan has been paid in full or successfully challenged, no portion of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Prepetition Lender, including, without limitation, any action challenging or raising any defenses to the Prepetition Loan, or the liens of the Prepetition Lender.

28.     The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Facility Documents, or applicable law, as the

case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Lender.

29.     Nothing in this Interim Order or in any of the DIP Facility Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtor in the operation of its business or in connection with its restructuring efforts.

30.     To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Facility Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Facility Documents, the terms and provisions of this Interim Order shall govern.

31.     Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

32.     The Final Hearing is scheduled for **Friday, March 18, 2011** at **10:00 a.m.** before this Court.  The Debtor shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by first class mail, postage prepaid, upon: (i) the U.S. Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Lender; (iv) the Prepetition Lender; (v) all other parties with liens of record on assets of the Debtor as of the Petition Date; (vi) all financial institutions at which the Debtor maintains deposit accounts; (vii) the landlords for all non-residential real properties occupied by the Debtor as of the Petition Date; and (vii) all other parties requesting notice

pursuant to Bankruptcy Rule 2002. The notice of the entry of this Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with the United States Bankruptcy Court for the District of Colorado by no later than 5:00 p.m. (prevailing Mountain time) on March 17, 2011 (the "**Objection Deadline**"), which objections shall be served so that the same are actually received before the Objection Deadline by (a) counsel to the Debtor, Jeffrey Brinen, Kutner Miller Brinen, P.C., 303 E. 17th Avenue, Suite 500, Denver, CO  80203 (b) counsel to the DIP Lender, Fairfield and Woods, P.C., 1700 Lincoln Street, Suite 2400, Denver, CO  80203, Attn:  Caroline C. Fuller; (c) counsel to any Committee; and (d) counsel to the U.S. Trustee. Any objections by creditors or other parties-in-interest to any provisions of this Order shall be deemed waived unless timely filed and served in accordance with this Paragraph 32.

33.     This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order and/or the DIP Facility Documents.

Dated:  March 10, 2011                    United States Bankruptcy Court:

_Sid Brooks_

_____

Honorable Sidney B. Brooks
United States Bankruptcy Judge

# EXHIBIT A

## APPROVED BUDGET

## Chapter 11 DIP financing
## 135k over 3 months

| | March | Week 1 | week 2 | week 3 | week 4 | April | May |
|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | |
| LICENSEE SALES | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 | 40,000 |
| WHOLESALE SALES | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 | 15,000 | 20,000 |
| COMMERCIAL SALES | | | | | | | |
| RETAIL INSTALLS | 300,000 | 75,000 | 75,000 | 75,000 | 75,000 | 350,000 | 400,000 |
| **TOTAL REVENUE** | 330,000 | 82,500 | 82,500 | 82,500 | 82,500 | 395,000 | 460,000 |
| | | | | | | | |
| **EXPENSES (Manufacturing)** | | | | | | | |
| MANUFACTURING COSTS | | | | | | | |
| CONTRACT LABOR WINDOWS | 89,100 | 22,275 | 22,275 | 22,275 | 22,275 | 106,650 | 124,200 |
| **TOTAL EXPENSES/MANUFACTURING** | 89,100 | 22,275 | 22,275 | 22,275 | 22,275 | 106,650 | 124,200 |
| **GROSS MARGIN** | 240,900 | 60,225 | 60,225 | 60,225 | 60,225 | 288,350 | 335,800 |
| | | | | | | | |
| **WAGES & PAYROLL EXPENSE** | | | | | | | |
| Installation | 39,000 | 9,750 | 9,750 | 9,750 | 9,750 | 45,500 | 52,000 |
| Service | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 6,000 |
| Sales | 37,200 | 9,300 | 9,300 | 9,300 | 9,300 | 43,800 | 50,400 |
| Marketing | | | | | | | |
| Accounting | | | | | | | |
| General Administration | 4,000 | 1,000 | 1,000 | 1,000 | 1,000 | 3,000 | 3,000 |
| Manufacturing | 2,240 | 540 | 540 | 540 | 540 | 2,240 | 2,240 |
| R&D/Facilities/Mtnc | 30,000 | 7,500 | 7,500 | 7,500 | 7,500 | 43,000 | 48,000 |
| Shipping/Receiving/Warehouse | | | | | | | |
| Production | 1,600 | 400 | 400 | 400 | 400 | 1,600 | 1,600 |
| Officer Wages | 2,000 | 500 | 500 | 500 | 500 | 2,000 | 2,000 |
| HEALTH INSURANCE | 5,000 | 1,250 | 1,250 | 1,250 | 1,250 | 5,000 | 5,000 |
| PAYROLL TAXES | 17,086 | 5,139 | 5,139 | 5,139 | 5,139 | 20,600 | 23,134 |
| **TOTAL WAGE EXPENSE** | 144,126 | 36,879 | 36,879 | 36,879 | 36,879 | 172,740 | 193,374 |

## SELLING/ADMIN. EXPENSES

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ADVERTISING/TV & RADIO | 32,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 32,000 | 32,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 250 | 250 | 250 | 250 | 250 | 1,000 | 1,000 |
| ADV/PROMO MISC. | 1,000 | 250 | 250 | 250 | 250 | 250 | 1,000 | 1,000 |
| HOMESHOW FEES & MISC.EXP. | 1,100 | 275 | 275 | 275 | 275 | 275 | 1,100 | 1,100 |
| ACCOUNTANTS/ATTORNEYS | - | | | | | | | |
| AUTO/TRAVEL MFG | 2,000 | 500 | 500 | 500 | 500 | 500 | 7,500 | 7,500 |
| AUTO/INST/VANS | 1,000 | 250 | 250 | 250 | 250 | 250 | 2,000 | 2,000 |
| EQUIPMENT RENTAL | 1,000 | 250 | 250 | 250 | 250 | 250 | 1,000 | 1,000 |
| FEES/PERMITS/LICENSES/MISC TAX | 4,950 | 1,238 | 1,238 | 1,238 | 1,238 | 1,238 | 5,925 | 6,900 |
| FINANCE & VISA FEES | 3,000 | 750 | 750 | 750 | 750 | 750 | 3,500 | 4,000 |
| FREIGHT IN PURCHASE | | | | | | | 10,000 | 10,000 |
| INSURANCE BUSINESS | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 10,000 | 10,000 |
| OFFICE SUPPLIES/COMPUTER/GARYCC | 1,500 | 375 | 375 | 375 | 375 | 375 | 1,500 | 1,500 |
| RENT PECOS | 35,826 | 8,957 | 8,957 | 8,957 | 8,957 | 8,957 | 35,826 | 35,826 |
| RENT/SHOWROOMS (NEW MEXICO) | 2,500 | 625 | 625 | 625 | 625 | 625 | 2,500 | 2,500 |
| NEW MEXICO EXPENSE | 2,000 | 500 | 500 | 500 | 500 | 500 | 2,000 | 2,000 |
| REPAIR/SHOP/TOOLS/TRASH | 2,000 | 500 | 500 | 500 | 500 | 500 | 2,000 | 2,000 |
| UTILITIES | 7,500 | 1,875 | 1,875 | 1,875 | 1,875 | 1,875 | 7,500 | 7,500 |
| TELEPHONE | 4,500 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 4,500 | 4,500 |
| **TOTAL SELLING/ADMIN. EXPENSES** | 112,876 | 28,220 | 28,220 | 28,220 | 28,220 | 28,220 | 131,851 | 133,326 |
| | | | | | | | | |
| US QUARTERLY FEES | | | | | | | 1,950 | |
| | | | | | | | | |
| **TOTAL MONTHLY EXPENSES** | 257,002 | 65,099 | 65,099 | 65,099 | 65,099 | 65,099 | 306,541 | 326,700 |
| | | | | | | | | |
| **NET INCOME TOTAL** | $(16,102) | $(4,874) | $(4,874) | $(4,874) | $(4,874) | $(4,874) | $(18,191) | $9,100 |
| | | | | | | | | |
| DIP Financing | 45000 | 11250 | 11250 | 11250 | 11250 | 11250 | 45000 | 45000 |
| | | | | | | | | |
| Total | $28,898 | $6,377 | $6,376 | $6,376 | $6,376 | $6,376 | $26,809 | $54,100 |