UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
)
ACCENT WINDOWS, INC., ) Case No. 11-14348- SBB
EIN #84-1292301 ) Chapter 11
)
Debtor. )
)

**MOTION FOR APPROVAL OF PROCEDURES FOR SALE OF ALL ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**

  The Debtor, Accent Windows, Inc. (the "Debtor"), by and through its undersigned counsel and pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure hereby submits its Motion for Approval of Procedures for Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances (the "Motion") as follows:

  1. The Debtor filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on March 4, 2011, and the Debtor remains a debtor in possession. This is the Debtor's second Chapter 11 bankruptcy case. The Debtor previously filed for relief under Chapter 11 of the Bankruptcy Code on November 4, 2008, and had its plan of reorganization was confirmed on September 9, 2009.

  2. The Debtor continues in possession of its property and is operating and managing its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**JURISDICTION AND VENUE**

  3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409

**THE DEBTOR**

  4. The Debtor is a custom manufacturer specializing in energy efficient vinyl replacement windows and patio doors manufactured in the Debtor's Westminster, Colorado facility. The Debtor's replacement doors and windows are sold in Colorado, Arizona, Utah, New Mexico, Texas, Montana, and Wyoming (the "Business"). An overview of the Debtor's business and products may be viewed at

products may be viewed at www.accentwindows.com.

5. While the Debtor was in bankruptcy in 2009, it restructured its operations to attempt to reduce the substantial losses that were occurring. Employee salaries, including the officers, were reduced by an average of 25%, and the Debtor terminated or renegotiated premise leases and certain contracts which resulted in lower expenses. The Debtor also revamped its marketing strategy. Although the Debtor suffered average net operating losses between January and May 2009 of $58,000 per month, the Debtor was profitable in June 2009, and projected continued profitability into their strong season. At that time the Debtor believed that the worst of the economic downturn had passed, and that it had created a cost structure and marketing plan that would result in sustained profitability. However, the economy did not rebound in 2010, the damage to the Debtor's business from competitors using the bankruptcy case to their advantage was substantial, and the Debtor suffered additional losses in 2010.

6. These factors, combined with the undercapitalized nature of the Debtor's balance sheet, have created a business that had substantial debt and insufficient resources to service that debt. There was a continuous and ongoing need for additional cash resources to fund the business operations.

7. The Debtor's principal place of business, including where it manufactures its product, is at its leased facility locate at 12300 Pecos Street, Westminster, Colorado ("Facility"). The lease ("Lease") was scheduled to run through January 31, 2014, followed by a five-year option if the Debtor was not in default. The landlord is Pecos20, LLC ("Landlord"). There is no security deposit.

8. As of the Petition Date the Debtor was in default of the Lease due to unpaid rent of approximately $111,767. A forcible entry and detainer action against the Debtor was pending in the Adams County District Court as of the Petition Date.

9. The Debtor's largest unsecured creditor is this case is PH Tech, Inc. ("PH Tech"), which holds an unsecured claim in the amount of $776,721.

10. The Debtor and PH Tech entered into a Note and Security Agreement dated February 25, 2011, pursuant to which PH Tech has loaned the Debtor pre-petition the sum of $15,000 (the "PH Tech Agreement"). The PH Tech Agreement provides PH Tech with security interests in all of the Debtor's assets, including without limitation all of Debtor's right, title and interest in and to all accounts, chattel paper, documents, general intangibles, instruments, goods and money, whether now

existing or hereafter created and whether now owned or hereafter acquired, and all proceeds of all of the foregoing. PH Tech's security interest was perfected by a UCC Financing Statement filed with the Colorado Secretary of State, Reception No. 20112009696, on February 28, 2011. The total amount due with respect to the PH Tech Agreement as of the Petition Date was $15,000, including principal and interest.

11. Pursuant to the PH Tech Agreement, PH Tech holds a first priority lien against the Debtor's assets, except that TruSeal Technologies, Inc. holds a first priority interest in certain equipment financed and used by the Debtor and known as the Besten 84" 5 Pair Press. PH Tech holds a junior lien against that same equipment.

12. The PH Tech Agreement provides that the Debtor's financial obligation to PH Tech is due upon closing on the sale of all or substantially all of the Debtor's assets, or April 29, 2011, whichever is earlier.

13. In addition to the $15,000 due to PH Tech as of the Petition Date, the Debtor is seeking approval of a debtor-in-possession loan from PH Tech for an amount of up to $135,000 (the "DIP Loan"). Thus far, the Debtor has obtained interim approval to borrow up to $56,250 of the DIP Loan.

## REQUESTED RELIEF

14. Accent has negotiated an Asset Purchase Agreement (the "Agreement") with PH Tech and/or its assigns (the "Buyer") to sell all or substantially all of the Debtor's assets (the "Debtor's Assets"). The Agreement is attached hereto as Exhibit A. The purchase price for the Debtor's Assets pursuant to the Agreement is $600,000 (the "Purchase Price"), payable at the closing of the Agreement. The Purchase Price assumes an inventory level with a book value of $280,000. Any variation in the book value of Seller's inventory as of the Closing Date shall be reflected in a 50 cent adjustment to the Purchase Price for each dollar in variation, either up or down, between the $280,000 book value and the actual book value of the inventory as of the Closing Date.

15. Additionally, the Buyer will receive a credit for vacation pay obligations it assumes, the amount of all customer deposits received by Accent prior to the closing date in connection with customer contracts assumed and assigned to the Buyer at closing; and the amount of any other prepetition liabilities assumed by Buyer at closing. The Agreement is contingent upon the Buyer

entering into a new lease agreement with the landlord of the Debtor's Facility. Effectively, after all adjustments are made to the Purchase Price, the Agreement will provide for PH Tech to credit bid the amount of the Debtor's monetary obligation pursuant to the PH Tech Agreement and DIP Loan, and pay the balance of the Purchase Price in cash. Therefore, assuming that the Debtor borrows the entire amount of the DIP Loan, PH Tech will be entitled to credit bid $150,000 plus interest.

16. The Debtor will file in the near future a motion for approval of the sale of the Debtor's Assets free and clear of liens, claims and encumbrances under the provisions of 11 U.S.C. § 363 (the "Sale Motion").

17. The Debtor believes that it is in the best interests of the Debtor, its estate and its creditors to accept the offer of PH Tech for the purchase of the Debtor's Assets subject to higher or otherwise better competitive bids.

18. The Debtor and PH Tech recognize that sales of properties in bankruptcy cases are subject to higher and better bids (the "Competing Bids") which may be submitted by competing bidders (the "Competing Bidder(s)"). The Debtor requests that the Court approve the overbid and auction terms and procedures set forth herein.

19. To constitute a Qualified Bid, a bid must satisfy the following requirements:

(a) The bid must be in writing and must include an executed definitive asset purchase agreement (the "APA") which shall be on the same terms and conditions in all material respects as those set forth in the Agreement, including payment of a cash component, closing costs, and administrative claims pursuant to Section 364(c).

(b) Any bid shall not be conditioned upon the ability of the bidder to obtain financing or the outcome of unperformed due diligence by the bidder. The bid shall have no condition or contingency other than those associated with the assumption and assignment to the successful bidder of specific leases and contracts.

(c) Any bid must identify those executory contracts and unexpired leases of the Debtor that the bidder will request that the Debtor assume and assign to it. The successful bidder must negotiate a new contract or pay any and all amounts necessary to cure.

(d) Any bid must be accompanied by a signed letter directly (i) setting forth the identity of the bidder, the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtors involved in such bid, (ii) stating that the bidder offers to purchase the Assets upon the terms and

4

and conditions set forth in the APA, (iii) summarizing the proposed consideration the bidder proposes to pay under the APA, (iv) stating the bidder's best assessment of the aggregate value of the consideration the bidder proposes to pay under the APA (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), (v) stating the form and amount of any deposit being delivered by such bidder, and (vi) further providing that such offer if determined to be the second highest and best bid shall be binding and irrevocable until 15 days after the auction occurs.

(e)     The bid must be accompanied by a deposit payable to the Debtor's counsel (by means of a certified bank check from a U.S. bank or by wire transfer) in the amount of $50,000, which is to be non-refundable should the bidder be the highest bidder but refuse or fail to proceed to closing.

(f)     Any party submitting a bid must produce adequate documentation (a) to demonstrate such party's wherewithal to consummate the contemplated transaction, and/or (b) to provide adequate assurance of future performance to any parties to any leases or contracts it intends to assume. Notwithstanding anything in these Bidding Procedures to the contrary, the Debtor may declare that any bid is not a Qualified Bid if the party submitting such bid does not provide documents evidencing such party's wherewithal to consummate the contemplated transaction and/or adequate assurance of future performance.

(g)     Initial incremental overbids shall be in the amount of $50,000 (the "Initial Incremental Overbid Amount") and additional bids will be in the amount of $50,000 each above the previous high incremental overbid (the "Minimum Incremental Bid Amount").

(h)     The Debtor will provide reasonable access to its books and records to interested persons for the purpose of conducting due diligence, provided that any such person provide written evidence acceptable to the Debtor that such Competing Bidder has the present financial ability to consummate the transaction contemplated herein. All Competing Bidders are deemed to acknowledge that they had an opportunity to inspect the Debtor's Assets and all related documents thereto prior to making any bid and are also deemed to have relied solely on such review and upon their investigation and inspection in making their offers.

(i)     PH Tech shall be entitled to credit bid the total amount of the Debtor's monetary obligation pursuant to the PH Tech Agreement and DIP Loan, and pay the balance of the Purchase Price (as adjusted pursuant to the Agreement) in cash.

(j)  Initial Competing Bids must be Qualified Bids and must be delivered to the Debtor's counsel (the "Bid Deadline") on or before 5:00 P.M., Mountain Standard Time, on April ____, 2011 (three (3) days prior to the Sale Hearing). If a Qualified Bid is received by the Bid Deadline, the auction of the Debtor's Assets (the "Auction") shall take place in Courtroom E, at the United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 on April ____, 2011 at ___:___ __.m. or such later time and date (or other place) as the Debtor shall notify all parties who have submitted Qualified Bids. The following terms shall govern the Auction and the subsequent sale:

(i)  Only the Qualified Bidders shall be entitled to make any bids at the Auction.

(ii)  At the commencement of the Auction, the Debtor will announce its determination, in its business judgment, of the highest and best Qualified Bid for the Assets. Subsequent competing bids must be Qualified Bids (except that they are not required to be in writing) and shall be made in increments of not less than $50,000 in excess of the last submitted, highest Qualified Bid. Bidding at the Auction will continue until such time as the highest and best Qualified Bid is determined by the Debtor's business judgment.

(iii)  At the Auction, the Debtor may announce additional procedural rules that are reasonable under the circumstances and not inconsistent with the Bidding Procedures or the Procedures Order

(k)  Once a buyer is determined at the Auction, the Debtor will request the Court enter an order (i) approving (A) the Agreement in the event PH Tech is not overbid, or (B) in the event of a higher bid by a Competing Bidder pursuant to the above-described procedures, the amount of the bid, the form of the contract and the winning bidder, and (ii) authorizing the Debtor to sell the Debtor's Assets to such winning bidder pursuant to the terms of the APA, provided that, in the event the winning bidder pursuant to the above-described bidding procedures is not PH Tech, as consideration for PH Tech's role as the stalking horse bidder, $50,000 of the Initial Incremental Overbid Amount shall be paid to PH Tech (the "Break-up Fee").

(l)  In the event the sale to the winning bidder fails to close, Debtor shall be authorized to sell to the next highest Competing Bidder.

20.  The Debtor requests that this Court approve the above procedures. The Debtor believes that the sale and overbid procedures are fair and reasonable.

WHEREFORE, the Debtor requests that this Court enter its order approving the proposed Procedure for Sale of All Assets Free and Clear of All Liens, Claims, and Encumbrances, and Request for Hearing Thereon, and such further relief as to the Court appears proper.

Dated: March 17, 2011

Respectfully submitted,

By: /s/ Jeffrey Brinen
Jeffrey S. Brinen, #20565
**KUTNER MILLER BRINEN, P.C.**
303 E. 17th Avenue, Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: jsb@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 17, 2011, I served by prepaid first class mail a copy of the MOTION FOR APPROVAL OF PROCEDURES FOR SALE OF ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBNRANCES AND NOTICE OF MOTION FOR APPROVAL OF PROCEDURES FOR SALE OF ALL ASETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Caroline C. Fuller, Esq.
1700 Lincoln St.
Ste. 2400
Denver, CO 80203-4524

Alan K. Motes, Esq.
United States Trustee Program
999 18th St., Ste. 1551
Denver, CO 80202

Microtech-Tel
160 Inverness Drive West, Suite 100
Englewood, CO 80112

New Mexico Gas Company
P.O. Box 97500
Albuquerque, NM 87199-7500

PNM
PO Box 17970
Denver, CO 80217

Xcel Energy
414 Nicollet Mall
Minneapolis, MN 55401-1993

Qwest
P.O. Box 173638
Denver, CO 80217-3638

s/ Elizabeth Dobos
Elizabeth Dobos

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ACCENT WINDOWS, INC., | )  Case No. 11-14348- SBB |
| EIN #84-1292301 | )  Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER ESTABLISHING PROCEDURES FOR BIDDING ON SALE OF ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**

THIS MATTER having come before the Court on the Debtor's Motion for Approval of Procedures for Sale of All Assets Free and Clear of All Liens, Claims, and Encumbrances (the "Motion"), there being no objections filed with respect to the Motion, and cause being shown to the Court, it is hereby

ORDERED

THAT the following overbid and auction terms and procedures are hereby approved:

The Debtor and PH Tech, Inc. ("PH Tech") have entered into an Asset Purchase Agreement ("Agreement"), which allows for PH Tech to place a credit bid equal to the amount of its allowed secured claim (the "Credit Bid"). All other bids shall be referred to as "Competing Bids", and the procedures for such bids shall be governed as follows:

To constitute a Qualified Bid, a bid must satisfy the following requirements:

    (a)    The bid must be in writing and must include an executed definitive asset purchase agreement (the "APA") which shall be on the same terms and conditions in all material respects as those set forth in the Agreement, including payment of a cash component, closing costs, and administrative claims pursuant to Section 364(c).

    (b)    Any bid shall not be conditioned upon the ability of the bidder to obtain financing or the outcome of unperformed due diligence by the bidder. The bid shall have no condition or contingency other than those associated with the assumption and assignment to the successful bidder of specific leases and contracts.

(c)     Any bid must identify those executory contracts and unexpired leases of the Debtor that the bidder will request that the Debtor assume and assign to it. The successful bidder must negotiate a new contract or pay any and all amounts necessary to cure.

(d)     Any bid must be accompanied by a signed letter directly (i) setting forth the identity of the bidder, the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtors involved in such bid, (ii) stating that the bidder offers to purchase the Assets upon the terms and conditions set forth in the APA, (iii) summarizing the proposed consideration the bidder proposes to pay under the APA, (iv) stating the bidder's best assessment of the aggregate value of the consideration the bidder proposes to pay under the APA (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), (v) stating the form and amount of any deposit being delivered by such bidder, and (vi) further providing that such offer if determined to be the second highest and best bid shall be binding and irrevocable until 15 days after the auction occurs.

(e)     The bid must be accompanied by a deposit payable to the Debtor's counsel (by means of a certified bank check from a U.S. bank or by wire transfer) in the amount of $50,000, which is to be non-refundable should the bidder be the highest bidder but refuse or fail to proceed to closing.

(f)     Any party submitting a bid must produce adequate documentation (a) to demonstrate such party's wherewithal to consummate the contemplated transaction, and/or (b) to provide adequate assurance of future performance to any parties to any leases or contracts it intends to assume. Notwithstanding anything in these Bidding Procedures to the contrary, the Debtor may declare that any bid is not a Qualified Bid if the party submitting such bid does not provide documents evidencing such party's wherewithal to consummate the contemplated transaction and/or adequate assurance of future performance.

(g)     Initial incremental overbids shall be in the amount of $50,000 (the "Initial Incremental Overbid Amount") and additional bids will be in the amount of $50,000 each above the previous high incremental overbid (the "Minimum Incremental Bid Amount").

(h)     The Debtor will provide reasonable access to its books and records to interested persons for the purpose of conducting due diligence, provided that any such person provide written evidence acceptable to the Debtor that such Competing Bidder has the present financial ability to consummate the transaction contemplated herein. All Competing Bidders are deemed to acknowledge that they had an opportunity to inspect the Debtor's Assets and all related documents thereto prior to making any bid and are also deemed to

have relied solely on such review and upon their investigation and inspection in making their offers.

(i)     PH Tech shall be entitled to credit bid the total amount of the Debtor's monetary obligation pursuant to the PH Tech Agreement and DIP Loan, and pay the balance of the Purchase Price (as adjusted pursuant to the Agreement) in cash.

(j)     Initial Competing Bids must be Qualified Bids and must be delivered to the Debtor's counsel (the "Bid Deadline") on or before 5:00 P.M., Mountain Standard Time, on April ____, 2011 (three (3) days prior to the Sale Hearing). If a Qualified Bid is received by the Bid Deadline, the auction of the Debtor's Assets (the "Auction") shall take place in Courtroom E, at the United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 on April ____, 2011 at ___:___ __.m. or such later time and date (or other place) as the Debtor shall notify all parties who have submitted Qualified Bids. The following terms shall govern the Auction and the subsequent sale:

    (i)     Only the Qualified Bidders shall be entitled to make any bids at the Auction.

    (ii)    At the commencement of the Auction, the Debtor will announce its determination, in its business judgment, of the highest and best Qualified Bid for the Assets. Subsequent competing bids must be Qualified Bids (except that they are not required to be in writing) and shall be made in increments of not less than $50,000 in excess of the last submitted, highest Qualified Bid. Bidding at the Auction will continue until such time as the highest and best Qualified Bid is determined by the Debtor's business judgment.

    (iii)   At the Auction, the Debtor may announce additional procedural rules that are reasonable under the circumstances and not inconsistent with the Bidding Procedures or the Procedures Order

(k)     Once a buyer is determined at the Auction, the Debtor will request the Court enter an order (i) approving (A) the Agreement in the event PH Tech is not overbid, or (B) in the event of a higher bid by a Competing Bidder pursuant to the above-described procedures, the amount of the bid, the form of the contract and the winning bidder, and (ii) authorizing the Debtor to sell the Debtor's Assets to such winning bidder pursuant to the terms of the APA, provided that, in the event the winning bidder pursuant to the above-described bidding procedures is not PH Tech, as consideration for PH Tech's role as the stalking horse bidder, $50,000 of the Initial Incremental Overbid Amount shall be paid to PH Tech (the "Break-up Fee").

(l)  In the event the sale to the winning bidder fails to close, Debtor shall be authorized to sell to the next highest Competing Bidder.

Done and entered this _____ day of April 2011, at Denver, Colorado.

BY THE COURT:

_____
Honorable Sidney B. Brooks
United States Bankruptcy Court Judge