UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ACCENT WINDOWS, INC., | ) | Case No. 11-14348-SBB |
| EIN #84-1292301 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### OBJECTION TO MOTION FOR RELIEF FROM STAY

PH Tech, Inc., by its counsel, Fairfield and Woods, P.C., states its response and objection to Pecos 20, LLC's Motion for Relief from Stay as follows:

1. Accent Windows, Inc. (the "Debtor") filed its voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on March 4, 2011 (the "Petition Date"), and remains a debtor in possession.

2. The Debtor is engaged in the business of manufacturing energy efficient vinyl replacements windows. The Debtor's primary place of business is located at 12300 Pecos Street, Westminster, Colorado (the "Premises").

3. Respondent, PH Tech, Inc. ("PH Tech"), is the Debtor's largest unsecured creditor and is currently providing financial support to the Debtor pursuant to a Debtor-in-Possession Financing Agreement. Upon information and belief, the Debtor would not be able to operate without the financing provided by PH Tech.

4. PH Tech and the Debtor also entered into an Amended Asset Purchase Agreement (the "Amended APA") whereby PH Tech is to purchase substantially all of the Debtor's assets

for the gross sale price of $600,000.00. The Court has approved bid and auction procedures, and a motion to approve the sale is pending. Competing bids, if any, are due by May 2, 2011 and, if any competing bids are received, or any objections to the proposed sale are filed, the Court has scheduled a hearing on the proposed sale for May 18, 2011.

5. The Debtor leases the Premises from Pecos 20, LLC ("Pecos") pursuant to a lease which runs through January 31, 2014 (the "Lease"). As of the Petition Date, the Debtor was in default under the Lease due to unpaid rents in the approximate amount of $111,767.00.

6. In connection with the negotiation of the Amended APA, PH Tech discussed terms of a possible continued lease of the Premises with Pecos, but the parties were unable to come to agreed terms, primarily because the Premises are significantly larger than is currently needed for the business. Thus, if it is the successful purchaser, PH Tech is prepared to promptly identify alternative space and to relocate the business. The Amended APA provides that PH Tech, if it is the successful purchaser, shall have up to 90 days after closing of the purchase to relocate the business to another location, and that the Lease with Pecos shall be rejected as of the date PH Tech surrenders possession to it. Under the Amended APA, PH Tech will pay all post-closing rents arising under the Lease until it vacates the Premises.

7. On March 29, 2011, approximately 25 days into this bankruptcy case, Pecos filed a Motion for Relief from Stay seeking this Court's permission to proceed with a forcible entry and detainer action that it commenced in the Adams County District Court, State of Colorado prior to the Petition Date (the "Motion").

8. In support of the Motion, Pecos asserts that cause exists to grant it relief from

the automatic stay because:

    a. It is not adequately protected;

    b. The Debtor has no equity in the Premises and it is not necessary for an effective reorganization;

    c. The proposed asset sale to PH Tech will fail because it is contingent upon PH Tech entering into a new lease for the Premises and this material condition cannot be met; and

    d. There is no prospect of an effective reorganization.

9. With respect to the automatic stay, Congress has stated:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws, It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U. S. Code Cong & Admin. News 5787, 5840-41. *See also*, Pursifull v. Eakin, 814 F.2d 1501, 1504 (10th Cir. 1987) ("The purpose of the automatic stay provided by 11 U.S.C. § 362 is to protect the debtor and his creditors by allowing the debtor to reorganize his affairs, and by ensuring that the bankruptcy procedure may operate to provide orderly resolution of all claims.")

10. Notwithstanding the purpose of the automatic stay, it may be modified upon a showing of "cause." Id. at 1506. Because the term cause is not defined in the Bankruptcy Code, "discretionary relief from the stay must be determined on a case by case basis." Id.

11. In determining whether cause exists for modifying the automatic stay, Courts

often apply one of two tests, either the necessity test or the balancing test.

12. Under the "necessity" test, the Court must determine whether modifying the stay will impact an asset of the estate that: (a) the debtor needs to reorganize, (b) will make an "identifiable contribution" to the debtor's reorganization, or (c) provides a benefit to the estate or enhances the sale value of the business. Matter of Baskerville, 93 B.R. 251, 253 (D. Colo. 1988). If there is a "reasonable likelihood" that the asset is necessary for reorganization, the stay should not be lifted. Id.

13. The balancing test has two variations. Under one version of the balancing test, "the stay will be modified to permit an action to proceed in a different forum if (1) the debtor will not be prejudiced substantially, (2) the relative hardship suffered by the creditor outweighs that of the debtor, and (3) the creditor has demonstrated a probability of success on the merits of the action." In re Reisor Co., Inc., 46 B.R. 290, 291 (Bankr. W.D. La. 1985); *see also*, In re Bock Laundry Mach. Co., 37 Bankr. 564, 566 (Bankr. N.D. Ohio 1984).

14. This Court has considered the other version of the balancing test, holding that the automatic stay may be modified if: "(1) no great prejudice will result to the debtor or the debtor's estate, and (2) the hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay." In re Harris, 85 B.R. 858, 860 (Bankr. D. Colo. 1988).

15. In detailing the difference between the applicability of the two prong test compared to the three prong test, this Court explained that in the majority of cases where courts applied the three prong test, "the movant [was seeking] relief from the stay to pursue a specific

remedy not available under the Bankruptcy Code, or because its security interest is not adequately protected. . . . A merits analysis is perhaps more important in these cases, where the movant is seeking extraordinary relief that permanently affects the debtor or his estate." In re Peterson, 116 B.R. 247, 249-50 (D. Colo. 1990).

16. When the merit prong is considered, the moving party has the burden of making more than a "vague initial showing" that movant can establish a prima facie case. Id. at 249.

17. As an initial consideration, the Motion must be denied because it is premature. Specifically, Pecos seeks relief from the automatic stay prior to the expiration of the 120 day initial period for assumption or rejection of nonresidential real property leases set forth in 11 U.S.C. § 365(d)(4)(A). That period expires on July 5, 2011.

18. Section 365(d)(4)(A) provides as follows:

Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—

(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

19. While the Court has discretion under 11 U.S.C. § 365(d)(4)(B)(i) to extend the period determined under Section 365(d)(4)(A) for 90 days, Section 365 does not contain an analogous provision whereby that time period can be shortened. Regardless, the Motion does not include a request to shorten the period 120 period and must be denied because it is premature and is designed to deprive the Debtor of a fundamental protection granted it under the Bankruptcy

5

Code – a reasonable period of time to decide whether to assume or reject real property leases.

20. Pecos's argument that it is not adequately protected must also fail because it is adequately protected by the Debtor's post-petition performance under the Lease and PH Tech's commitment, under the Amended APA, to pay post-closing rents until it vacates the leased premises.

21. Section 361(1) provides that when adequate protection is required to protect an interest in property, it may be provided by periodic cash payments to the extent that the automatic stay results in a decrease in the value of such property. Courts have determined that periodic cash payments include lease payments. "A lessor is only entitled to that amount of adequate protection which would enable him to receive the benefit of his bargain." In re Wheeling-Pittsburgh Steel Corp., 54 B.R. 385, 391 (Bankr. W.D. Pa. 1985). A lessor's adequate protection is defined by payments required under the lease. In re P.J. Clarke's Rest. Corp., 265 B.R. 392, 400 (Bankr. S.D.N.Y. 2001). *See also*, In re Dabney, 45 B.R. 312, 313 (Bankr. E.D. Pa. 1985) (The adequate protection required for a lessor is the performance for which he has contracted, which is by the lessee's compliance with the provisions of the lease).

22. The Motion should also fail under the necessity test because the Debtor's continued use of the Premises is clearly necessary for an effective reorganization. Upon information and belief, the Debtor uses the equipment located in the Premises every day to manufacture product in support of its sales operation. As the Premises contain all of the Debtor's manufacturing equipment, the Debtor would be forced to close down if the Landlord is granted relief from stay. Continued operation of the business pending closing of an asset sale is a key

condition of such a sale, whether to PH Tech or another, higher bidder.

23. Moreover, closing down the Debtor's business would likely result in a conversion to Chapter 7 where the Debtor's assets would be sold piecemeal at a fraction of what PH Tech is willing to pay for them as part of an ongoing business. As such, the Premises enhance the sale value of the Debtor's business and further satisfy the necessity test.

24. As a practical matter, the Debtor has no other location to which it can relocate, nor does it have funding to relocate, and PH Tech will terminate any further DIP financing and pull out of the asset purchase agreement if the Debtor is forced to shut down its operations. Such a result would substantially prejudice the Debtor and the value of the estate while resulting in minimal harm to Pecos which is adequately protected.

25. As a final consideration, it should be noted that Pecos' request for relief from the automatic stay also relies on a condition contained in the originally proposed Asset Purchase Agreement, which required PH Tech to enter into a new lease for the Premise. This reliance is misplaced. Indeed, that condition was removed from the Amended Asset Purchase Agreement that was filed for this Court's approval on April 11, 2011 (Docket No. 71).

WHEREFORE, PH Tech, Inc. requests this Court to enter an Order denying Pecos 20, LLC's Motion for Relief from Stay, and for such further relief as to the Court appears proper.

DATED this 19th day of April, 2001.

                      FAIRFIELD AND WOODS, P.C.
                      By *s/ Jason A. Forman*
                      Caroline C. Fuller, #14403
                      Jason A. Forman, #36302
                      Wells Fargo Center, Suite 2400
                      1700 Lincoln Street
                      Denver, Colorado 80203-4524
                      (303) 830-2400

Attorneys for PH Tech, Inc.

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on April 19, 2011, a true and correct copy of the foregoing was served by United States Mail, first class postage prepaid on the following:

Joseph G. Rosania, Esq.
Connolly, Rosania & Lofstedt, P.C.
950 Spruce St., Suite 1C
Lousiville, CO 80027

Jeffrey S. Brinen, Esq.
Kutner Miller Brinen, P.C.
303 E. 17th Avenue, Suite 500
Denver, CO 80203

Alan K. Motes, Esq.
United States Trustee Program
999 18th St., Ste. 1551
Denver, CO 80202

                                                  *s/Julie Boling*
                                                   Julie Boling